ELLEN F. ROSENBLUM
Attorney General
THOMAS H. CASTELLI, #226448
Senior Assistant Attorney General
ALEX JONES, #213898
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: thomas.castelli@doj.state.or.us
        alex.jones@doj.state.or.us

*Attorneys for Defendants Charlene Williams, Brian Detman and Cord Bueker, Jr.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| YOUTH 71FIVE MINISTRIES, | Case No. 1:24-cv-399-CL |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| CHARLENE WILLIAMS, Director of Oregon Department of Education, in her individual and official capacities; et al., | |
| Defendants. | |

# TABLE OF CONTENTS

LR 7-1 CERTIFICATION ......................................................................................................... 1

MOTION .................................................................................................................................... 1

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................... 2

III.   LEGAL STANDARD ........................................................................................... 4

     A.  Qualified Immunity May Be Properly Raised in a Fed. R. Civ. P. 12(b)(6)
        Motion to Dismiss. ..................................................................................... 5

     B.  Qualified Immunity Should Be Granted Where Plaintiff's Allegations Do
        Not Show that Defendants Violated a "Clearly Established" Right.............. 6

IV.   ARGUMENT ........................................................................................................ 7

     A.  Plaintiff's allegations are insufficient to show that Defendants violated
        a clearly established right under the Free Exercise Clause by prohibiting
        the State from adding a nondiscrimination condition for receiving grant
        money. ......................................................................................................... 8

        1.  Plaintiff relies on cases that do not support its claim that the inclusion of
           the nondiscrimination condition violates a clearly establish right. ......... 9

        2.  Plaintiff cannot rely on *Fulton v. City of Philadelphia* to argue
           Defendants violated a clearly establish right......................................... 12

     B.  The church autonomy doctrine and ministerial exception do not create a
        clearly established right prohibiting the State from limiting grant recipients
        to applicants who comply with a nondiscrimination condition.................... 14

        1.  The ministerial exception is an affirmative defense and does not
           establish any right to exemption from the nondiscrimination condition.
           .................................................................................................................. 15

        2.  The church autonomy doctrine does not clearly establish a right to
           exemption from the Grant's nondiscrimination condition. .................... 17

     C.  There is no clearly established right under the Free Speech Clause
        prohibiting the nondiscrimination condition. ............................................. 18

V.    CONCLUSION .................................................................................................... 20

## TABLE OF AUTHORITIES

### Cases

*Act Up!/Portland v. Bagley*,
   988 F.2d 868 (9th Cir. 1993) ................................................................................... 7

*Anderson v. Creighton*,
   483 U.S. 635 (1987) ....................................................................................... 7, 20

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ................................................................................... passim

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................. 5, 6, 20

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 5

*Bryce v. Episcopal Church*,
   289 F.3d 648 (10th Cir. 2002) ............................................................................ 17

*Carson v. Makin*,
   596 U.S. 767 (2022) ..................................................................................... 9, 10

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings College of the Law v. Martinez*,
   561 U.S. 661 (2010) ....................................................................... 11, 18, 19, 20

*City of Portland v. Homeaway.com, Inc.*,
   191 F. Supp. 3d 1157 (D. Or. 2016) ....................................................................... 6

*Conner v. Heiman*,
   672 F.3d 1126, *reconsid. denied*, 2012 WL 4613435 (9th Cir. 2012) ........................................ 5

*D.C. v. Wesby*,
   583 U.S. 48 (2018) ......................................................................................... 7

*Durning v. First Bos. Corp.*,
   815 F.2d 1265 (9th Cir. 1987) ............................................................................. 5

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) .............................................................................. 6

*Employment Div. v. Smith*,
   494 U.S. 872 (1990) ........................................................................................ 8

*Espinoza v. Mont. Dep't of Revenue*,
   140 S. Ct. 2246 (2020) ................................................................................... 9, 10

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Fulton v. City of Philadelphia*,
  593 U.S. 522 (2021) ........................................................................... 12, 14

*Grove City Coll. v. Bell*,
  465 U.S. 555 (1984) ................................................................................ 19

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) .................................................................................. 5

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*,
  565 U.S. 171 (2012) ................................................................ 14, 15, 16, 17

*Hunter v. Bryant*,
  502 U.S. 224 (1991) .................................................................................. 7

*Johnson v. Fed. Home Loan Mortg. Corp.*,
  793 F.3d 1005 (9th Cir. 2015) .................................................................. 5

*Malik v. Brown*,
  16 F.3d 330 (9th Cir. 1994) ...................................................................... 8

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*,
  138 S. Ct. 1719 (2018) .............................................................................. 8

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) .................................................................................. 5

*Mullenix v. Luna*,
  577 U.S. 7 (2015) ...................................................................................... 7

*Nat'l Endowment for the Arts v. Finley*,
  524 U.S. 569 (1998) ................................................................................ 19

*Norwood v. Harrison*,
  413 U.S. 455 (2010) ................................................................................ 18

*Our Lady of Guadalupe School v. Morrissey-Berru*,
  140 S. Ct. 2049 (2020) ..................................................................... 14, 17

*Pearson v. Callahan*,
  555 U.S. 223 (2009) .............................................................................. 4, 5

*Plumhoff v. Rickard*,
  572 U.S. 765 (2014) .................................................................................. 7

*Puri v. Khalsa*,
  844 F.3d 1152 (9th Cir. 2017) .................................................... 15, 16, 17, 18

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ................................................................ 6

*Tarhuni v. Holder*,
    8 F. Supp. 3d 1253 (D. Or. 2014) .......................................................... 5

*Tingley v. Ferguson*,
    47 F.4th 1055 (9th Cir. 2022) ............................................................... 12

*Tolan v. Cotton*,
    572 U.S. 650 (2014) ............................................................................... 6

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. 449 (2017) ........................................................................... 9, 10

*White v. Pauly*,
    580 US 73 (2017) ................................................................................ 5, 7

*Williams v. Grant Cnty.*,
    No. 2:15-CV-01760-SU, 2016 WL 4745179 (D. Or. Sept. 12, 2016) ...................... 5

## Statutes

42 U.S.C. § 1983 ......................................................................................... 4

ORS 417.847 ............................................................................................... 2

ORS 417.852 ............................................................................................... 2

## Rules

Fed. R. Civ. P. 12 ................................................................................ 1, 2, 5

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## LR 7-1 CERTIFICATION

Counsel for the Defendants conferred by telephone on March 27, 2024, with counsel for Plaintiff about the subject of this motion, but they could not resolve their dispute. Plaintiff opposes the motion.

## MOTION

Defendants Charlene Williams, Brian Detman, and Cord Buker, Jr. move to dismiss the claims filed against them in their individual capacities by Plaintiff Youth 71Five Ministries under Fed. R. Civ. P. 12(b)(6). This motion is supported by the following Memorandum of Law, the Complaint and its accompanying exhibits (ECF 1). Defendants move to dismiss Plaintiff's claims against them for damages in their individual capacities because Defendants are entitled to qualified immunity. Even when taking allegations in the Complaint as true, Plaintiff cannot show that Defendants violated a clearly established law.

## I.    INTRODUCTION

The Oregon Department of Education (ODE) through the Youth Development Division (YDD) provides funding for community-based youth development programs and services through the Youth Community Investment Grants (the "Grants"). ECF 1-9 at 4. To be eligible for a grant, an applicant must meet several requirements. A requirement for the May 1, 2023 Request for Grant Applications (RFA) required applicants to certify that they do not discriminate in certain employment or service delivery practices. ECF 1 at ¶ 89; ECF 1-7 at 23. Plaintiff admits that it discriminates in its hiring practices and requires that all employees and volunteers to "'subscribe and adhere without mental reservation'" to a statement of faith. ECF 1 at ¶ 45. Plaintiff brings this lawsuit claiming that this nondiscrimination condition violates the Free Exercise and Free Speech clauses of the First Amendment, as well as the ministerial exception and church autonomy doctrine under the religion clauses of the First Amendment. ECF 1 at ¶¶ 145-183. Even if Plaintiff

Page 1 -   **DEFENDANTS' MOTION TO DISMISS**

ultimately proves its case, the rights Plaintiff claims Defendants violated are not clearly established.  Defendants are therefore entitled to qualified immunity and all claims against them in their individual capacity for damages should be dismissed.

## II.    BACKGROUND[1]

The YDD functions under the direction and control of the Youth Development Council (YDC).  ORS 417.852.  The Council coordinates "a unified and aligned system that provides services to school-age children through youth 24 years of age in a manner that supports educational and workforce success, promotes protective factors, prevents justice system involvement, reduces high risk behaviors and is measurable and accountable."  ORS 417.847(2).  Among its duties, the YDD is charged with "[d]istribut[ing] funding as directed by the council or the Legislative Assembly and administer[ing] grant funding processes and programs."  ORS 417.852(3)(a).  YDD administers the Grants as part of this program.  *See* ECF 1 at ¶ 22.

The Grants include four initiatives: (1) Youth Promise; (2) Youth Workforce Readiness; (3) Youth Solutions; and (4) Youth Violence and Grag Prevention.  *Id*. at ¶ 65; ECF 1-9 at 4.  The Youth Promise initiative provides funds for existing programs that help improve and sustain engagement in education and the workforce to help youth realize their potential.  *Id*. at ¶ 66.  The Youth Workforce Readiness initiative supports career exploration and skill development services for youth.  *Id*. at ¶ 67.  The Youth Solutions initiative funds programs supporting youth with risk factors leading to negative educational and workforce outcomes.  *Id*. at ¶ 68.  The Youth Violence and Gang Prevention initiative supports youth at risk of committing or being victims of violent crime.  *Id*. at ¶ 69.

---

[1] Defendants dispute many of the allegations made in the Complaint.  However, Defendants bring this motion under Fed. R. Civ. P. 12(b)(6).  For the purposes of this motion, the Court must assume Plaintiff's allegations are true.

Page 2 -    **DEFENDANTS' MOTION TO DISMISS**

YDD issued the Request for Grant Applications (RFA) for the Grants on May 1, 2023. ECF 1-9 at 2. The RFA contains an Applicant Information and Certification Sheet which contains several eligibility criteria for the Grants. *Id*. at 13, 24. These criteria are reflected in the online application. ECF 1-7 at 23; ECF 1-8 at 26. The application required all grant applicants to certify that they "do[] not discriminate in [their] employment practices, vendor selection, subcontracting, or service delivery with regard to race, ethnicity, religion, age, political affiliation, gender, disability, sexual orientation, national origin or citizenship status." ECF 1-7 at 23; ECF 1-8 at 26; ECF 1 at ¶ 89.

Plaintiff is a non-profit organization based in Medford, Oregon. ECF 1 at ¶ 20. Plaintiff identifies as a Christian organization. *Id*. It alleges it has approximately 30 employees and over 100 volunteers. *Id*. at ¶ 41. Plaintiff applied for the Youth Promise grant and the Youth Violence and Gang Prevention grant. *Id*. at ¶ 74.

Plaintiff admits that it discriminates in its employment practices by hiring only those who share its religious beliefs. *Id*. at ¶¶ 44-45. Plaintiff requires that all employees and volunteers "'subscribe and adhere without mental reservation'" to a "Statement of Faith." *Id*. at ¶ 45. Plaintiff also requires all employees and volunteers to "be actively involved in a local church" and to "encourage the students and families served by the ministry to be involved in a local church too." *Id*. at ¶¶ 46-47. Despite these practices, Plaintiff "decided to check the box certifying that it does not 'discriminate'" *Id*. at ¶ 93.

In July 2023, YDD notified Plaintiff that it had been conditionally awarded grants under the program. *Id*. at ¶¶ 99-100. Four other faith-based organizations also received grants. *Id*. at ¶¶ 101-102. Plaintiff admits that those four organizations do not "require their employees or volunteers to share their faith or religious beliefs like 71Five Ministries does." *Id*. at ¶ 103. On

Page 3 -   **DEFENDANTS' MOTION TO DISMISS**

October 9, 2023, ODE, on behalf of YDD, informed Plaintiff that it was disqualified from moving forward in the grant process because of its employment practices. *See* ECF 1-10 at 12-14; ECF 1 at ¶¶ 106-108. ODE advised Plaintiff to suspend "all activities that are or may take place under the pending grant awards" and asked that Plaintiff respond if the information received concerning the employment practices was incorrect. ECF 1-10 at 13. Plaintiff responded and did not deny the accuracy of the information concerning its employment practices. *Id*. at 11. On November 13, 2023, ODE informed Plaintiff that, based on their response, the final decision was made not to proceed with the grant because Plaintiff was disqualified and provided inaccurate certifications. *Id*. at 9; ECF 1 at ¶¶ 112-113. YDD did not provide any payments to Plaintiff under the grant program. ECF 1 at ¶ 120.

Plaintiff filed this lawsuit against Defendants in both their official and individual capacities. *Id*. at ¶¶ 21-23. Plaintiffs ask for compensatory and nominal damages against Defendants. *Id*. at 29, Prayer for Relief, subsection D. Plaintiff alleges that "[r]easonable government officials in Defendants' shoes would have known that their actions violated 71Five Ministries' constitutional rights because the ministry's constitutional rights were clearly established at the time of the violation … ." *Id*. at ¶ 132. The cases cited by Plaintiff in support of this proposition, and other relevant case law demonstrate that the rights Plaintiff claims Defendants violated are not clearly established and the individual capacity claims against Defendants should be dismissed.

## III.    LEGAL STANDARD

Qualified immunity is a defense to damages claims brought under 42 U.S.C. § 1983. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Qualified immunity applies when a government official's conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also White v. Pauly*, 580 US 73 (2017) (quoting *Pearson* for the same proposition). Qualified immunity recognizes that government officials must be given "breathing room to make reasonable but mistaken judgements" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 563 U.S. at 743 (citation omitted).

### A. Qualified Immunity May Be Properly Raised in a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss.

"Qualified immunity is '*an immunity from suit* rather than a mere defense to liability.'" *Conner v. Heiman*, 672 F.3d 1126, 1130, *reconsid. denied*, 2012 WL 4613435 (9th Cir. 2012) (emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, a ruling should be made early in the case and, where possible, prior to discovery. *Pearson*, 555 U.S. at 232. To that end, "[q]ualified immunity may be raised in a motion under Fed. R. Civ. P. 12(b)(6). *Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1278 (D. Or. 2014).

The Court should apply the procedures and standards developed for assessing claims under Fed. R. Civ. P. 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (applying 12(b)(6) standard to motion to dismiss based on qualified immunity); *see also Williams v. Grant Cnty*., No. 2:15-CV-01760-SU, 2016 WL 4745179, at *4 (D. Or. Sept. 12, 2016) (citing *Iqbal* for proposition that 12(b)(6) standards apply in qualified immunity case). Therefore, the Court should assess the complaint "'in the light most favorable to the plaintiff' to 'determine whether it alleges enough facts 'to state a claim to relief that is plausible on its face.'" *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion under 12(b)(6), the Court typically cannot consider material outside a complaint. However, the Court may consider documents attached to the complaint. *Durning v. First Bos. Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *City of Portland v.*

Page 5 -   **DEFENDANTS' MOTION TO DISMISS**

*Homeaway.com, Inc.*, 191 F. Supp. 3d 1157, 1161 (D. Or. 2016).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff's allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The court, however, should not credit a plaintiff's legal conclusions that masquerade as factual allegations. *Iqbal*, 556 U.S. at 678-79. To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

**B. Qualified Immunity Should Be Granted Where Plaintiff's Allegations Do Not Show that Defendants Violated a "Clearly Established" Right.**

There are two prongs to analyzing qualified immunity. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The first prong is whether the officer violated plaintiff's constitutional rights. *Id*. at 655-56. The second prong is whether the rights were "'clearly established' at the time of the violation." *Id*. at 656 (citation omitted). The prongs may be evaluated in any order. *Id*. The second prong is at issue in this motion.[2] "The threshold determination of whether the law governing the conduct

---

[2] Defendants do not agree that they have violated any of Plaintiff's rights and reserve that issue for future motions or a final hearing on the merits. Defendants have filed their Response to Plaintiff's Motion for Preliminary Injunction contemporaneously with this Motion. The response brief outlines why Plaintiff is unlikely to succeed on the merits of its claim. For the purposes of this Motion to Dismiss, Defendants ask that the Court consider whether the law governing the conduct alleged in the Complaint is clearly established.

Page 6 -   **DEFENDANTS' MOTION TO DISMISS**

at issue is clearly established is a question of law for the court." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

To be clearly established, the right in question must be "sufficiently clear that every reasonable official would have understood that what he is doing violated that right." *Anderson v. Creighton*, 483 U.S. 635, 40 (1987); *see also Mullenix v. Luna*, 577 U.S. 7, 11 (2015).  To avoid qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate."  *al-Kidd*, 563 U.S. at 741; *White v. Pauly*, 580 U.S. 73, 79 (2017).  "The rule must be 'settled law.'"  *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam)).  This requires either controlling authority or a "robust 'consensus of cases of persuasive authority.'"  *al-Kidd*, 563 U.S. at 742.

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality."  *al-Kidd*, 563 U.S. at 742; *see also White*, 580 U.S. at 79 (2017) ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'") (quoting *al-Kidd*, 563 U.S. 742.).  The right must be "particularized" to the facts of the case.  *White*, 580 U.S. at 79. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987).  A state official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014).

## IV.     ARGUMENT

Plaintiff claims Defendants violated its right to religious freedom and association by adding a nondiscrimination condition to the Grant applications in 2023.  The challenged provision states:

"[a]pplicant does not discriminate in its employment practices, vendor selection, subcontracting, or service delivery with regard to race, ethnicity, religion, age, political affiliation, gender, disability, sexual orientation, national origin or citizenship status." ECF 1-7 at 23; ECF 1 at ¶ 89. Even when accepting Plaintiff's allegations as true, Plaintiff cannot establish that Defendants have violated any clearly established law.

### A. Plaintiff's allegations are insufficient to show that Defendants violated a clearly established right under the Free Exercise Clause by prohibiting the State from adding a nondiscrimination condition for receiving grant money.

The Free Exercise and Establishment Clauses provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. I. The Free Exercise Clause prohibits government action that is "hostile to the religious beliefs of affected citizens . . . and that passes judgment upon or presupposes the illegitimacy of religious beliefs or practices." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018). Indeed, "[t]he free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Employment Div. v. Smith*, 494 U.S. 872, 877 (1990). Although the Constitution protects sincerely held religious beliefs, the constitution does not guarantee an unlimited right to religious practice. *See Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). "[T]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability[.]" *Smith*, 494 U.S. at 879 (quotation marks omitted).

Plaintiff advances two theories for how the nondiscrimination condition violates the Free Exercise Clause. Plaintiff argues that the condition (1) "excludes applicants from a public benefit just because of their religious character and practice," and (2) "is neither neutral nor generally applicable because it targets faith-based organizations like 71Five Ministries and allows for individualized exceptions." ECF 20 at 17. Both arguments fail to establish that any Defendant

Page 8 -    **DEFENDANTS' MOTION TO DISMISS**

violated a clearly established right.

> **1. Plaintiff relies on cases that do not support its claim that the inclusion of the nondiscrimination condition violates a clearly establish right.**

Plaintiff argues that "[r]easonable government officials in Defendants' shoes would have known that their actions violated 71Five Ministries' constitutional rights because the ministry's constitutional rights were clearly established at the time of the violation." ECF 1 at ¶ 132. For this proposition, Plaintiff cites to three Supreme Court cases: *Trinity Lutheran*, *Espinoza*, and *Carson*. *Id*. None of the cases come close to the particularized facts presented in this case. They, therefore, cannot clearly establish that Plaintiff has a right to be free from the nondiscrimination eligibility requirement.

In the *Trinity Lutheran* line of cases, the Supreme Court struck down funding restrictions that categorically denied benefits to certain institutions based solely on the religious character of the institutions or their activities. In *Trinity Lutheran*, the Court held that a church could not be excluded from a public benefit "solely because it [was] a church." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 467 (2017). In *Espinoza*, the Court held that a state could not impose a "categorical ban" on aid to "religious schools," "solely because they are religious." *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2261 (2020). In *Carson*, the Court struck down a funding restriction that "rigidly exclude[d] any and all sectarian schools." *Carson v. Makin*, 596 U.S. 767, 781 & n.* (2022). In all three cases, the Court concluded that the funding restrictions excluded recipients "solely because of their religious character." *Id.* at 780 (quoting *Trinity Lutheran*, 582 U.S. at 462); *Espinoza*, 140 S. Ct. at 2260 (same).

This case differs from those cited above. All three of the cases involved funding for schools which specifically excluded religious schools. In contrast, YDD's grant program does not exclude applicants based on the religious character of the applicants. The nondiscrimination condition

does not disqualify any organization based on whether it is a religious organization but rather disqualified any candidate, religious or not, based on discriminatory employment practices. The RFA clearly invites religious organizations to apply. ECF 1-9 at 5 ("To be eligible for a rant under this RFA, Applicants must meet the following criteria: . . . [a] faith-based organization.") Plaintiff further alleges that four other "faith-based organizations" received grants under the program. ECF 1 ¶¶ 101-02. Plaintiff admits that those religious organizations, unlike Plaintiff, do not discriminate in their hiring or volunteer practices. ECF 1 ¶ 103. Plaintiff was disqualified because it does discriminate. ECF 1 ¶ 90. The religious character and beliefs of the various applicants made no difference.

While the nondiscrimination condition prohibits discrimination with respect to religion, as well as race, ethnicity, age, and various other characteristics, the condition makes no reference at all to the religious character, affiliation, beliefs, or activities of the applicant itself. *See* ECF 1-7 at 23. That is in sharp contrast with the funding restrictions considered in the *Trinity Lutheran* line of cases, all of which were explicitly premised on an institution's religious status or religious exercise. *See Trinity Lutheran*, 582 U.S. at 455 ("a strict and express policy of denying grants to any applicant owned or controlled by a church, sect, or other religious entity"); *Espinoza*, 140 S. Ct. at 2256 (restriction barred all aid to "religious schools," meaning "'schools controlled in whole or in part by churches,' 'sectarian schools,' and 'religiously-affiliated schools'"); *Carson*, 596 U.S. at 775 (restriction barred aid to any "sectarian school," meaning any school "that is associated with a particular faith or belief system and which, . . . promotes the faith or belief system with which it is associated and/or presents the material taught through the lens of this faith").

The *Trinity Lutheran* cases do not establish that inclusion of a nondiscrimination condition violates the free exercise clause. In fact, Plaintiff's argument is directly contradicted by *Christian*

Page 10 -  **DEFENDANTS' MOTION TO DISMISS**

*Legal Soc'y Chapter of the Univ. of Cal., Hastings College of the Law v. Martinez*, 561 U.S. 661
(2010). In that case, the Supreme Court upheld a substantially similar nondiscrimination policy.
*Id*. at 694 n.24, 697 n.27. A law school required that all officially recognized student groups accept
all students "regardless of [their] status or beliefs," barring the plaintiff student group from
discriminating on the basis of religion or sexual orientation. *Id.* at 668, 675. The Court rejected
free-exercise, free-speech, and expressive-association challenges to the policy, concluding that the
policy was generally applicable and neutral with respect to religion, and was also neutral with
respect to *any* viewpoint or belief. *Id.* at 694 n.24, 696, 697 & n.27. The Court explained that
"CLS's conduct—not its Christian perspective—is, from Hastings' vantage point, what stands
between the group and [Registered Student Organization] status." *Id.* at 696. The Court
emphasized that the nondiscrimination policy applied to the plaintiff student group "in common
with all other student organizations," and that the plaintiff group was thus seeking a "preferential
exemption" from the policy." *Id.* at 669. The Court concluded that the group "cannot moor its
request for accommodation to the Free Exercise Clause." *Id.* at 697 n.27.

  Plaintiff's allegations bear out a similar policy here. The nondiscrimination condition
applies without exception to all grant applicants, and it disqualifies applicants based on their
discriminatory practices, not their religious perspectives. *See* ECF 9-1 at 5 (showing that the Grant
program is open to religious and secular groups); ECF 1 at ¶ 89 ("The 2023-25 grant application
required *applicants* for the first time to check a box certifying that they "do[ ] not discriminate . .
.") (emphasis added) (alteration in original). Plaintiff does not, and cannot, allege that the
nondiscrimination condition applied only to religious or faith-based organizations.

  Even if Plaintiff ultimately prevails with its legal arguments, it cannot point to "existing
precedent [that] placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S.

Page 11 -  **DEFENDANTS' MOTION TO DISMISS**

at 741.  Defendants are therefore entitled to qualified immunity in their individual capacities.

### 2. Plaintiff cannot rely on *Fulton v. City of Philadelphia* to argue Defendants violated a clearly establish right.

Plaintiff's invocation of *Fulton v. City of Philadelphia* does not provide clear precedent that the nondiscrimination condition violates any clearly established right.  Plaintiff argues that, like in *Fulton*, Defendants retained discretion to exempt applicants from the nondiscrimination Condition, making it unconstitutional.  ECF 1 at ¶ 171.  Plaintiff's own allegations and the clear meaning of the documents it attached to its Complaint show that Defendants had no discretion to waive the requirement.

In *Fulton*, the Court stuck done Philadelphia's nondiscrimination requirement because it "incorporates a system of individual exemptions, made available in this case at the 'sole discretion' of the Commissioner."  *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021).  This system was problematic because "if there is a 'formal mechanism for granting exceptions' that 'invite[s] the government to consider the particular reasons for a person's conduct,'" the law is not generally applicable and must survive strict scrutiny.  *Tingley v. Ferguson*, 47 F.4th 1055, 1087-88 (9th Cir. 2022) (quoting *Fulton*, 593 U.S. at 537).

The allegations in the complaint and the documents attached show that the RFA and the application process require *all* applicants to certify that they will comply with the nondiscrimination condition.  Each applicant "must complete and submit all Applicant Information and Certification information," including the certification that the "Applicant does not discriminate in its employment practices, vendor selection, subcontracting, or service delivery with regard to race, ethnicity, religion, age, political affiliation, gender, disability, sexual orientation, national origin or citizenship status."  ECF 1-9 at 13; ECF 1-7 at 23.  If the application does not comply with all Application Requirements, including submission of the nondiscrimination certification, it

Page 12 -  **DEFENDANTS' MOTION TO DISMISS**

will be deemed "non-responsive" and will not proceed to the "evaluation" stage. *See* ECF 1-9 at 17 ("Responsive Applications meeting the requirements outlined in the Application Requirements section will be evaluated by an Evaluation Committee."). Thus, the RFA does not permit applicants to opt out of the nondiscrimination Condition for any reason.

Nor is there a mechanism to create individualized exemptions. Plaintiff allege that the RFA allows for "discretion to create exceptions" to the nondiscrimination condition. ECF 1 at ¶ 171. However, this conclusory allegation is directly contradicted by the RFA. An application cannot proceed to the "evaluation" stage unless the application is responsive to the Application Requirements, which include the nondiscrimination certification. ECF 1-9 at 13, 17. The "evaluation" is a competitive process of scoring and ranking the responsive applications. *See* ECF 1-9 at 17-22 (describing the scoring and ranking process). If there is only one application, there are no other applications to rank that application against, so the agency may "dispense with" that competitive process and "proceed with Grant negotiations and award." ECF 1-9 at 22. But to even get to that stage in the first place, an application must be responsive to the Application Requirements. Nothing in the RFA authorizes a waiver of those requirements. *See generally* ECF 1-9.

Plaintiff further argues that the RFA allows applicants to "negotiate" the nondiscrimination condition. ECF 1 at ¶ 127-28; *see also* ECF 20 at 21. The RFA provides that "[i]t may be possible to negotiate some provisions of the final *Grant*," and that the "Applicant must review the . . . Sample Grant [attached to the RFA] and note exceptions." ECF 1-9 at 23 (emphasis added); *see* ECF 1-7 at 22 (Plaintiff's application, "confirm[ing] review of the sample grant agreement," and requesting no "planned changes or exceptions to the standard provision of the grant agreement"). The RFA does not provide that an applicant may negotiate the Application Requirements

Page 13 -  **DEFENDANTS' MOTION TO DISMISS**

themselves, which are not part of the sample grant agreement.  Moreover, as noted above, compliance with those requirements is a prerequisite for an application to even be considered, let alone to proceed to negotiations of a final grant agreement.

As Plaintiff itself recognizes, if an applicant fails to certify that it will comply with the nondiscrimination condition, the application will be "'considered non-responsive,' meaning it [will] 'not be considered further.'"  ECF 1 at ¶ 95 (quoting ECF 1-9 at 13).  Plaintiff also admits that there were no exceptions.  *See* ECF 1 at ¶¶ 93-95 (alleging that Plaintiff certified that it complied with the nondiscrimination condition because "it had no other choice").  Plaintiff's own allegations, therefore, show that there is no "system of individual exemptions" like in *Fulton*. Plaintiff, therefore, cannot rely on *Fulton* as precedent that the nondiscrimination agreement violates Plaintiff free exercise rights.

### B.  The church autonomy doctrine and ministerial exception do not create a clearly established right prohibiting the State from limiting grant recipients to applicants who comply with a nondiscrimination condition.

Plaintiff raises two arguments based on "church autonomy": that the nondiscrimination condition violates "the ministerial exception" and that it violates the "church autonomy" doctrine. ECF 1 at ¶¶ 152-162.  Plaintiff asserts that "the Supreme Court has clearly established relevant boundaries for employees: the government cannot interfere with a religious organization's 'selection of those who will personify its beliefs.'"  ECF 1 at ¶ 11 (quoting *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188 (2012)).  In addition to *Hosanna-Tabor*, Plaintiff cites *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (2020), for the proposition that Defendants have violated a clearly established right. ECF 1 at ¶ 132.

Plaintiff misconstrues the breadth of the holdings in both cases as well as the ministerial exception and church autonomy doctrine.  Those principles place limits on *claims* that can be

Page 14 -  **DEFENDANTS' MOTION TO DISMISS**

brought involving religious institutions.  They do not allow religious organizations to override a generally applicable and neutral state action that indirectly burdens the employment of ministers or an organization's religiously motivated management decisions.  "[A]pplying any laws to religious institutions necessarily interferes with the unfettered autonomy churches would otherwise enjoy, but this sort of generalized and diffuse concern for church autonomy, without more, does not exempt them from the operation of secular laws."  *Puri v. Khalsa*, 844 F.3d 1152, 1168 (9th Cir. 2017).

### 1.  The ministerial exception is an affirmative defense and does not establish any right to exemption from the nondiscrimination condition.

"The ministerial exception is an affirmative defense."  *Id.* at 1158 (citing *Hosanna-Tabor*, 565 U.S. at 195 n. 4).  It "precludes application of [employment discrimination laws] to claims concerning the employment relationship between a religious institution and its ministers."  *Id.* at 1157 (quoting *Hosanna-Tabor*, 565 U.S. at 188) (alteration in *Puri*).  It bars "any claim with an associated remedy that would require the church to employ a minister," or that would require "relief for consequences of protected employment decisions, such as damages for lost or reduced pay."  *Id.* at 1158 (internal quotation marks omitted).

Plaintiff argues that the nondiscrimination condition violates the ministerial exception.  ECF 1 at ¶¶ 155-158.  Its argument converts the ministerial exception from an exceptional *defense* into an all-purpose affirmative right that applies to every indirect, conditional burden on employment decisions involving ministers.  Neither the Supreme Court nor the Ninth Circuit has applied the exception in this way.

Where the ministerial exception applies, it is extremely powerful.  "[W]hen applicable, it *flatly prohibits* courts from requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so."  *Puri*, 844 F.3d at 1158 (emphasis added; internal citations

Page 15 -  **DEFENDANTS' MOTION TO DISMISS**

and quotation marks omitted). It makes no difference that the law sought to be applied is "a valid and neutral law of general applicability." *Hosanna-Tabor*, 565 U.S. at 190. Nor does it matter whether the employment decision at issue was "made for a religious reason." *Id.* at 194. For example, in *Hosanna-Tabor*, the ministerial exception barred a claim alleging that the employee had been fired in retaliation for threatening to file an ADA lawsuit; the Supreme Court explained that it simply did not matter whether the employer's asserted religious reason for firing her was genuine. *Id.* at 180, 194-95.

The ministerial exception is a categorical bar, it does not depend on religious motivations, and it completely bypasses the standards for a free-exercise claim. If the exception were to apply in the way that Plaintiff invokes it, it would render *any* law or government action that even indirectly or conditionally burdens an employment decision involving a minister categorically unconstitutional. In considering an applicant's grant eligibility, YDD would be totally barred from considering *any* employment practice involving ministerial positions, including retaliation or racial discrimination.

Neither the Supreme Court nor the Ninth Circuit have even suggested the possibility of applying the ministerial exception in that manner. The courts have limited the exception to its role as a defense to certain types of claims. "[T]he Supreme Court has not articulated the scope of the ministerial exception beyond employment discrimination claims," while the Ninth Circuit "has framed the exception as applicable to any state law cause of action that would otherwise impinge on the church's prerogative to choose its ministers or to exercise its religious beliefs in the context of employing its ministers." *Puri*, 844 F.3d at 1158 (internal quotation marks and citation omitted).

There is no such cause of action at issue here. Both *Hosanna-Tabor* and *Our Lady of Guadalupe School* deal only with a former employee raising an employment claim under federal

laws. *See Hosanna-Tabor*, 565 U.S. at 179 (claim under the Americans with Disabilities Act); *Our Lady*, 140 S. Ct. at 2058-59 (claims under the Age Discrimination in Employment Act and allegation of discharge due to treatment for cancer). Plaintiff has not been sued by an employee and cannot invoke an affirmative defense. Even if Plaintiff were successful in arguing for the application of the ministerial exception in this circumstance, it cannot prove that such an expansion of the doctrine is a clearly established right.

### 2. The church autonomy doctrine does not clearly establish a right to exemption from the Grant's nondiscrimination condition.

Plaintiff also argues that the nondiscrimination condition violates the church autonomy doctrine. ECF 1 at ¶ 154. Plaintiff argues that this doctrine "safeguards a religious organization's decision about which employees and volunteers are best suited to further its religious mission and purpose." *Id*. The church autonomy has not been applied in a way that would clearly establish that the nondiscrimination condition is unconstitutional.

The church autonomy doctrine, known in the Ninth Circuit as the "ecclesiastical abstention doctrine," does not apply here. *See Puri*, 844 F.3d at 1164. "[T]he ecclesiastical abstention doctrine is a qualified limitation, requiring only that courts decide disputes involving religious organizations without resolving underlying controversies over religious doctrine." *Id.*; *cf. Bryce*, 289 F.3d at 655 ("[The] church autonomy doctrine prohibits civil court review of internal church disputes involving matters of faith, doctrine, church governance, and polity."). The doctrine "does not apply [when] the dispute is amenable to resolution by application of neutral principles of law." *Puri*, 844 F.3d at 1168.

There is no dispute involving a religious organization that would require YDD, Defendants, this Court, or any other state actor to "resolv[e] underlying controversies over religious doctrine." *See id.* at 1164. Plaintiffs make no allegation that, in denying the grant application, YDD had to

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

resolve any doctrinal controversy or "decide whether a religious organization properly applied ecclesiastical rules in settling a leadership dispute." *See id.* at 1167. Applying the nondiscrimination condition "amounts to a secular factual question." *See id.* The question is simply whether the grant applicant discriminated on one of the bases listed in the nondiscrimination certification. Plaintiff acknowledges that it did and does engage in such discrimination. ECF 1 at ¶¶ 41-62. Disqualifying Plaintiff from the grant program because of that discrimination was an "application of neutral principles of law." *See id.* at 1168. The ecclesiastical abstention doctrine does not apply and cannot provide clear precedent that application of the nondiscrimination provision to Plaintiff violated clearly established law.

### C. There is no clearly established right under the Free Speech Clause prohibiting the nondiscrimination condition.

Plaintiff argues that the nondiscrimination condition violates Plaintiff's right to expressive association under the Free Speech Clause of the First Amendment. ECF 1 at ¶¶ 178-183. Specifically, Plaintiff argues that conditioning grant eligibility on compliance with the nondiscrimination requirement "force[s] 71Five Ministries to give up its right to hire employees and work with volunteers who share its faith" *Id.* at ¶ 181. Plaintiff's expressive-association argument is contradicted by Supreme Court case law upholding viewpoint-neutral conditions on government-funded programs and organizations, including a nondiscrimination condition substantially similar to the one at issue here.

As the Court has explained, "[t]hat the Constitution may compel toleration of private discrimination in some circumstances does not mean that it requires state support for such discrimination." *Martinez*, 561 U.S. at 683 (quoting *Norwood v. Harrison*, 413 U.S. 455, 463 (2010)); *see id.* at 669 (conditioning access to school funds and facilities on compliance with nondiscrimination policy did not violate student group's free-speech, expressive-association, or

Page 18 - **DEFENDANTS' MOTION TO DISMISS**

free-exercise rights); *Grove City Coll. v. Bell*, 465 U.S. 555, 575 (1984) (conditioning federal funding on compliance with Title IX prohibition on sex discrimination "infringe[d] no First Amendment rights of [a] [c]ollege or its students"). "[A]lthough the First Amendment certainly has application in the subsidy context, . . . the Government may allocate competitive funding according to criteria that would be impermissible were direct regulation of speech or a criminal penalty at stake." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587-88 (1998).

In *Martinez*, a public law school "condition[ed] its official recognition of a student group—and the attendant use of school funds and facilities—on the organization's agreement to open eligibility for membership and leadership to all students," "regardless of [their] status or beliefs." *Martinez*, 561 U.S. at 668, 675. The plaintiff student group claimed that this nondiscrimination policy impaired its rights to free speech, expressive association, and free exercise of religion "by prompting it, on pain of relinquishing the advantages of recognition, to accept members who do not share the organization's core beliefs about religion and sexual orientation." *Id.* at 668. The Supreme Court rejected all of the student group's arguments, concluding that, while "[t]he First Amendment shield[ed] [the group] against state prohibition of [its] expressive activity," the group "enjoy[ed] no constitutional right to state subvention of its selectivity." *Id.*

For the purposes of the free-speech and expressive-association claims, the Court analyzed the nondiscrimination policy under limited-public-forum principles. *Id.* at 685. The Court reasoned that cases involving "regulations that *compelled* a group to include unwanted members, with no choice to opt out," were inapposite. *Id.* at 682. The Court concluded that the case instead "fit[] comfortably within the limited-public-forum category, for [the student group], in seeking what [was] effectively a state subsidy, face[d] only indirect pressure to modify its membership policies." *Id.*

Page 19 -  **DEFENDANTS' MOTION TO DISMISS**

Under the limited-public-forum standards, the school "[could] not exclude speech where its distinction is not reasonable in light of the purpose served by the forum," nor could it "discriminate against speech on the basis of . . . viewpoint." *Id.* at 685.  The Court concluded that the nondiscrimination policy was reasonable, in light of the school's interests in ensuring "equal access to all students," ease of enforcement, "encourage[ment] [of] tolerance, cooperation, and learning among students," and "declin[ing] to subsidize with public monies and benefits conduct of which the people of California disapprove." *Id.* at 687-90.

Plaintiff cannot show that the application of the nondiscrimination violates any clearly established right to its expressive association rights.  Supreme Court precedent trends the opposite.  The State is entitled to place reasonable conditions on extending grant funds.  Even if Plaintiff were ultimately successful in its free association claim, it cannot point to "existing precedent" clearly establishing its claimed right  *See al-Kidd*, 563 U.S. at 741.  Defendants are entitled to qualified immunity on Plaintiffs expressive association claim.

## V.    CONCLUSION

Plaintiff cannot meet its burden to prove that Defendants violated a clearly established right.  The allegations, even when taken as true, do not establish a particularized right that is "sufficiently clear that every reasonable official would have understood that what he is doing violated that right." *Anderson*, 483 U.S. at 640 (1987).  Plaintiff's allegations paint a picture of a valid and neutral law of general applicability.  Although Plaintiff makes conclusory allegations that exceptions may be made to the nondiscrimination condition, the allegations and exhibits to the Complaint do not bear this out.  *See Iqbal*, 556 U.S. at 678-79 (holding that legal conclusions should not be credited as factual allegations).  Plaintiff's attempt to extend the ministerial exception and church autonomy doctrines cannot serve as "existing precedent [that] placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.  Plaintiff's

Page 20 -  **DEFENDANTS' MOTION TO DISMISS**

expressive association claim likewise lacks any precedent supporting a clearly established right.

Because the allegations of the Complaint do not show a violation of a clearly established right, Defendants are entitled to qualified immunity. The Court should dismiss Plaintiff's claims for damages against Defendant in their individual capacity.

DATED April 12, 2024.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

_____*s/ Thomas H. Castelli*_____
THOMAS H. CASTELLI, #226448
Senior Assistant Attorney General
ALEX JONES, #213898
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
thomas.castelli@doj.state.or.us
alex.jones@doj.state.or.us
*Attorneys for Defendants Charlene Williams, Brian Detman and Cord Bueker, Jr.*